**AMERICAN EXPRESS TRAVEL RE-LATED SERVICES COMPANY, INC., Plaintiff–Appellee,**

v.

**Grace Elaine BAKER, Defendant–Appellant.**

**Nos. 97 C 3494, 96 A 979.**

United States District Court, N.D. Illinois, Eastern Division.

Sept. 30, 1997.

Bruce de'Medici, Chicago, IL, for American Express Travel Related Services Company, Inc.

Robert A. Filpi, Stack, Filpi & Kakacek, Chicago, IL, for Grace Baker.

## MEMORANDUM OPINION

GRADY, Senior District Judge.

Before the court is defendant-appellant's appeal from an order of the bankruptcy court denying her motion for attorney fees under Bankruptcy Code § 523(d) or Federal Rules of Bankruptcy Procedure 9011. For the reasons stated in this opinion, the order of the bankruptcy court is affirmed.

### BACKGROUND [1]

Grace Baker, the defendant-appellant in this matter, filed a Chapter 7 bankruptcy petition on March 25, 1996. On July 15, 1996, the plaintiff-appellee, American Express Travel Related Services, Co. ("American Express"), filed a complaint alleging that

---

1. The facts are uncontested and are taken from the parties' briefs.

Ms. Baker used her American Express card to purchase nearly $6,000.00 of "decorating services" in contemplation of bankruptcy, and that she incurred the debt by "false pretenses" without intent to repay the charges. *See* 11 U.S.C.A. § 523(a)(2)(A) & (a)(2)(C). American Express claimed that this conduct rendered her debt to American Express non-dischargeable in bankruptcy.[2] On November 19, 1996, American Express took Ms. Baker's deposition and thereafter decided to dismiss the complaint. American Express informed Ms. Baker of its intent to dismiss the case on January 9, 1997, and the bankruptcy court dismissed the complaint on January 23, 1997.

Ms. Baker subsequently moved the bankruptcy court to award her attorney fees. *See* 11 U.S.C.A. § 523(d) and Federal Rule of Bankruptcy Procedure 9011. In support of her motion, she alleged that she informed American Express eleven days after it filed the complaint that the charges at issue were incurred for business purposes, but American Express failed to investigate her assertion. Furthermore, Ms. Baker alleged that American Express pursued the complaint until fifteen days before trial, and as a result, she incurred attorney's fees in the amount of $4,141.00.

On March 27, 1997, the bankruptcy court denied her motion. She appeals that denial.

## DISCUSSION

### A. Attorney Fees Under 11 U.S.C. § 523(d)

■ The language of the statute permitting attorney's fees in certain circumstances reads as follows:

If a creditor requests a determination of dischargeability of a consumer debt under subsection (a)(2) of this section, and such debt is discharged, the court shall grant judgment in favor of the debtor for the costs of, and a reasonable attorney's fee

for, the proceeding if the court finds that the position of the creditor was not substantially justified, except that the court shall not award such costs and fees if special circumstances would make the award unjust.

11 U.S.C.A. § 523(d). The bankruptcy court determined that American Express had requested a determination of dischargeability under subsection (a)(2), and that the debt was discharged. *See In re Baker*, 206 B.R. 507, 509 (Bankr.N.D.Ill.1997). However, the bankruptcy court did not award attorney fees because the debt at issue was not a "consumer debt." *Id.* A consumer debt is defined by statute as "debt incurred by an individual primarily for a personal, family, or household purpose." 11 U.S.C.A. § 101(8). By Ms. Baker's own contention, the debt at issue was a business debt, not a "consumer debt," and thus she failed to prove the threshold elements necessary to recover attorney fees under § 523(d). *Id.* at 509–10.

Ms. Baker urges this court to reverse the bankruptcy court's interpretation of § 523(d) as regards to the term "consumer debt." This court reviews *de novo* the bankruptcy court's conclusions of law.[3] *See Bielecki v. Nettleton*, 183 B.R. 143, 145 (N.D.Ill.1995).

Ms. Baker argues that the bankruptcy court did not apply the "plain meaning" of § 523(d), but rather gave it an artificial construction by breaking it down into three distinct elements. *See* Brief on Appeal in Support of Motion of Grace Baker for Award of Attorney's Fee, at 7–8 ("Defendant's Brief"). According to Ms. Baker, the plain meaning of the statute requires only that the creditor *allege* that the debt at issue is a consumer debt, that the creditor seek to discharge the alleged consumer debt, and that the creditor fail in that effort. She argues that even if the alleged "consumer debt" is later found to be some other sort of debt (for example, a

---

**2.** Section 523(a)(2) of Title 11 operates to prevent individuals from discharging certain debts when they file for bankruptcy. For example, under subsection 523(a)(2)(A), a nondischargeable debt is one incurred by "false pretenses, a false representation, or actual fraud...." Furthermore, subsection 523(a)(2)(C) provides that for purposes of subparagraph (A) of this paragraph, consumer debts owed to a single credi-

tor and aggregating more than $1,000 for "luxury goods or services" incurred by an individual debtor on or within 60 days before the order for relief under this title, ... are presumed to be nondischargeable.

**3.** When reviewing final judgments of bankruptcy judges, the district courts have appellate jurisdiction. 28 U.S.C.A. § 158(a).

business debt) the debtor should be able to recover attorney fees under the statute.

Ms. Baker acknowledges that this is a novel reading of the statute but argues that it is supported by policy considerations. Penalties should apply, she argues, because otherwise creditors can bring dischargeability actions under § 523(a)(2) with impunity, and the damage wrought on an honest debtor is the same regardless of whether the debt is consumer debt or business debt. Moreover, she asserts, the purpose of the statute is to discourage creditors from filing unwarranted actions of non-dischargeability against honest debtors; that purpose will be thwarted if creditors can request dischargeability of alleged "consumer debts," and then later escape penalties if the debt at issue is not, in fact, a "consumer debt."

We do not agree. The Tenth Circuit has clearly stated that attorney's fees cannot be awarded under § 523(d) when the debt at issue is a business debt and not a consumer debt. *In re Burns*, 894 F.2d 361 (10th Cir. 1990). Bankruptcy courts follow this interpretation regularly, permitting recovery of attorney's fees only when consumer debts are at issue. *See In re Arlington*, 192 B.R. 494, 500 (Bankr.N.D.Ill.1996); *In re Jeffares*, 119 B.R. 872, 874 (Bankr.M.D.Fla.1990) (awarding fees where debt was incurred to pay utility bills, mortgage payments, and purchase food).

■ Second, the purpose of the statute is not as broad as Ms. Baker claims. By specifying "consumer debt," the statute protects debtors who buy goods and services for their personal maintenance rather than debtors who incur debt in order to earn a profit. *In re Burns*, 894 F.2d at 363. Indeed, the legislative history indicates that the definition of "consumer debt" was adapted from various consumer protection laws. *Id.* If the intent was to protect other types of debt, surely the generic word "debt" would have been used. *See In re Colbert*, 185 B.R. 247,

248 (Bankr.M.D.Tenn.1995) (invoking the principle "expressio unius est exclusio alterius"). Therefore, the purpose of the statute is not defeated by requiring that the party seeking attorney's fees to prove that the debt at issue is "consumer debt."

Finally, the defendant's argument is problematic because it places creditors with potentially legitimate claims under § 523(a)(2)(C) in an awkward position. Whether the debt is "consumer debt" is precisely what creditors are trying to determine; they must allege "consumer debt" if they believe the debtor has purchased personal luxury items in contemplation of bankruptcy. If their innocent mischaracterization of the debt as "consumer debt" is sufficient to render them liable for attorney fees, then the consequence would be to chill creditors from making potentially viable claims. That cannot be what the legislature intended.

We affirm the judgment of the bankruptcy court and hold that it properly denied Ms. Baker attorney fees under § 523(d).

### B. *Attorney Fees Under Bankruptcy Rule 9011*

Next, Ms. Baker argues that the bankruptcy court erred in denying her motion for attorney fees under Rule 9011.[4] Defendant's Brief, at 13. As an initial matter, we note that rule 9011 is analogous to former Federal Rule of Civil Procedure 11 because they impose sanctions under the same circumstances (with some exceptions not relevant here). *In re Excello Press, Inc.*, 967 F.2d 1109, 1111 (7th Cir.1992) (referring to Rule 11 prior to the 1993 amendments).

■ We review the ruling of the bankruptcy court under an abuse of discretion standard. *Pacific Dunlop Holdings, Inc. v. Barosh*, 22 F.3d 113, 118 (7th Cir.1994). An abuse of discretion has occurred when "no reasonable person could take the view adopted by the lower court." *In re Volpert*, 186 B.R. 240, 245 (N.D.Ill.1995) (quoting

---

**4.** Although her written motion below only indicates that she moved for attorney fees under 523(d), she mentions a claim for Rule 9011 sanctions in her brief. *See* Reply Memorandum in Support of Motion of Grace Baker for Award of Attorney Fee under Section 523(d), at 3. The

bankruptcy court did not address the propriety of Rule 9011 sanctions in its opinion; it may have done so orally. We note also that the bankruptcy court may impose sanctions on its own initiative under rule 9011.

*Marcus v. Shalala,* 17 F.3d 1033, 1037 (7th Cir.1994)).

Rule 9011(a) provides, in relevant part:

The signature of an attorney or a party constitutes a certificate that the attorney or party has read the document; that to best of the attorney's or party's knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law ... and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.... If a document is signed in violation of this rule, the court ... shall impose on the person who signed it, the represented party, or both, an appropriate sanction, which may include ... a reasonable attorney's fee.

Fed.R.Bankr.P. 9011(a).

■ The party may be sanctioned if it proceeded in bad faith, or it failed to conduct an adequate inquiry into the facts and law before filing the claim. *Excello Press,* 967 F.2d at 1112 (stating that the adequacy of the attorney's inquiry is dispositive, not whether the claim itself was frivolous or non-frivolous). The signer's conduct must be judged by inquiring what was objectively reasonable to believe at the time the pleading was signed. *In re Kaliana,* 207 B.R. 597, 601 (Bankr.N.D.Ill.1997) (citing *LaSalle Nat. Bank of Chicago v. County of DuPage,* 10 F.3d 1333, 1338 (7th Cir.1993)). The investigation need not be exhaustive; however, it must be reasonable under the circumstances of the particular case. *Excello Press,* 967 F.2d at 1112–13.

At the time American Express filed the complaint to determine the dischargeability of Ms. Baker's debt, it knew that Ms. Baker had used her personal American Express card to charge "decorating services" in the amount of $5,941.36—$2,294.71 of which was charged 60 days prior to filing Chapter 7 bankruptcy. Since "decorating services" are not obviously required for the support and maintenance of the debtor, American Express had a reasonable basis for believing they were luxury goods subject to § 523(a)(2)(C). Even Ms. Baker's counsel states:

In view of the manner in which American Express's customer, Freeman Decorating, prepared and sent in the charge ticket, it is understandable that American Express might suspect that Grace Baker had decorated her home within 60 days of filing bankruptcy.

Defendant's Brief, at 9. Clearly, at the time American Express filed the complaint it had a sufficient basis for believing that Ms. Baker's debt was likely to be non-dischargeable under § 523(a)(2)(C).

■ Ms. Baker urges that American Express should be sanctioned for failing to investigate its claim under 523(a)(2)(C) after it filed the complaint. Defendant's Brief, at 14. She alleges that she notified American Express eleven days after it filed the complaint that she did not purchase luxury goods for personal consumption. On November 14, 1996, American Express still had not investigated the claim but persisted in going forward. As she explains: "American Express's error lies not so much in the initial filing of the adversary complaint but in the prosecution of that complaint up to and including 15 days prior to the trial." Defendant's Brief, at 14.

Ms. Baker's claim fails because the focus of Rule 9011 is on what American Express reasonably believed *at the time it filed the complaint.* See *Kaliana,* 207 B.R. at 602 (emphasis added). Again we note that rule 9011 is analogous to former Federal Rule of Civil Procedure 11, and authorities interpreting former Rule 11 are useful in analyzing Rule 9011. *Excello Press,* 967 F.2d at 1111; *Kaliana,* 207 B.R. at 602. There is no requirement that parties update papers that were not subject to sanctions when filed. *Samuels v. Wilder,* 906 F.2d 272, 275 (7th Cir.1990) (discussing Rule 11). Nor is there a continuing obligation on a party to amend its complaint if the complaint was reasonably interposed in the first place. *Id.* Finally, sanctions are inappropriate for "inactivity or belated activity," such as tardiness in dismissing a complaint. *Id.* Therefore, Ms. Baker's charges are insufficient to warrant imposition of sanctions.

For the reasons set forth above we find that the bankruptcy court did not abuse its discretion in denying attorney fees. The order of the bankruptcy court is affirmed.