**In re Walter J. MILLER, Debtor.**

**Bank of America, Plaintiff,**

**v.**

**Walter J. Miller, Defendant.**

**Bankruptcy No. 00–50064.**

**Adversary No. 00–5014.**

United States Bankruptcy Court,
E.D. Kentucky,
Lexington Division.

June 26, 2000.

---

Linda J. West, Frankfort, KY, for plaintiff.

Sidney N. White, Lexington, KY, for defendant.

### MEMORANDUM OPINION

WILLIAM S. HOWARD, Bankruptcy Judge.

This matter has come before the Court for a ruling on the defendant's Motion to Amend Judgment (Doc. # 14). The defendant seeks to have the Court amend the Order Sustaining Motion for Summary Judgment of May 4, 2000 (Doc. # 12) to grant him a reasonable attorney fee in the amount of $1,000.00 pursuant to 11 U.S.C. § 523(d). This section allows attorney fees to a debtor who prevails in a nondischargeability action initiated by a creditor, when the creditor was not "substantially justified" in its position. This Court has jurisdiction of this matter pursuant to 28 U.S.C. § 1334(b); it is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(I).

The plaintiff filed a Complaint to Determine Dischargeability of Debt (Doc. # 1) on February 25, 2000, seeking to have the defendant's debt to it declared nondischargeable pursuant to 11 U.S.C. §§ 523(a)(2)(A) and 523(a)(2)(C), alleging that the debt in the amount of $1,181.58 was incurred by false pretenses, false representation and fraud. The defendant filed a Motion for Summary Judgment (Doc. # 5) on March 22, 2000 seeking dismissal of the Complaint and discharge of the subject debt. The plaintiff filed a Response (Doc. # 9) on April 12, 2000. A hearing on the Motion and Response was held on May 4, 2000, and the defendant's Motion was sustained. The Order Sustaining Motion for Summary Judgment was entered that same day as set out

above. The Order set out that the Court reserved for future determination the allowance of costs and attorney fees.

■ The defendant now seeks attorney fees pursuant to 11 U.S.C. § 523(d) which provides:

> If a creditor requests a determination of dischargeability of a consumer debt under subsection (a)(2) of this section, and such debt is discharged, the court shall grant judgment in favor of the debtor for the costs of, and a reasonable attorney's fee for, the proceeding if the court finds that the position of the creditor was not substantially justified, except that the court shall not award such costs and fees if special circumstances would make the award unjust.

The issue before the Court is therefore whether the plaintiff was "substantially justified" in its position. As the plaintiff points out in its Response to Defendant's Motion to Amend Judgment (Doc. # 15), the concept of substantial justification arose in the Equal Access to Justice Act, 28 U.S.C. § 2412(d)(1)(A). The Supreme Court (in a context other than bankruptcy) has interpreted the term to mean "justified in substance or in the main-that is, justified to a degree that could satisfy a reasonable person." *Pierce v. Underwood,* 487 U.S. 552, 565–66, 108 S.Ct. 2541, 2550, 101 L.Ed.2d 490 (1988).

■ Some courts have articulated this standard as one of reasonableness, i.e., to be substantially justified a creditor's position must be reasonable in both law and fact. This has been expressed as a three-part test: (1) a reasonable basis in law for the theory propounded; (2) a reasonable basis in truth for the facts alleged; and (3) a reasonable connection between the facts alleged and the legal theory advanced. See *In re Napier,* 205 B.R. 900 (Bkrtcy. N.D.Ill.1997), *inter alia.* Further, a determination of substantial justification

> should turn on a totality of the circumstances. This analysis permits a trial

court to examine a number of factors, including, but not limited to, whether the creditor attended the 341 meeting or conducted an examination under Rule 2004, as well as the extent of its pre-trial investigation.

*In re Williams,* 224 B.R. 523, 531 (2nd Cir. BAP 1998).

The legal theory propounded by the plaintiff was that the defendant obtained the sums represented by the subject debt by false pretenses, false representation or actual fraud. As set out in *In re Rembert,* 141 F.3d 277 (6th Cir.1998), a creditor may, pursuant to 11 U.S.C. § 523(a)(2)(A), establish that the debtor did so by proving the following elements:

> (1) the debtor obtained money through a material misrepresentation that, at the time, the debtor knew was false or made with gross recklessness as to its truth; (2) the debtor intended to deceive the creditor; (3) the creditor justifiably relied on the false misrepresentation; and (4) its reliance was the proximate cause of loss. . . . . In order to except a debt from discharge, a creditor must prove each of these elements by a preponderance of the evidence. . . . . Further, exceptions to discharge are to be strictly construed against the creditor. . . . . (Cites omitted.)

*Id.* at 280–81. As the plaintiff correctly points out, *Rembert* is "the premier Sixth Circuit case addressing § 523(a)(2)(A) claims and known to every attorney practicing in the field of bankruptcy."

The *Rembert* court made it clear that the element of intent can only be determined by an inquiry into "whether the debtor subjectively intended to repay the debt." *Id.,* at 281. Based on the affidavit tendered by the defendant in support of his Motion for Summary Judgment, and the failure of the plaintiff to provide any facts which disproved those set out in the affidavit, this Court determined that the defendant subjectively intended to pay the subject debt.

The companion legal theory propounded by the plaintiff was that it could avail itself of the presumption of nondischargeability provided by 11 U.S.C. § 523(a)(2)(C). That section provides that if a debtor has consumer debts owed to a single creditor and aggregating more than $1075 for "luxury goods and services" or has taken cash advances aggregating more than $1075 on an open-end account on or within 60 days of filing his bankruptcy petition, such debts are presumed to be nondischargeable. The facts alleged could not support this theory, either. The plaintiff's own records showed that there was only one cash advance taken in the amount of $1000 on November 12, 1999. The $156.48 payment to U.K. Patient Accounts was made directly, and was not in the nature of a cash advance as alleged by the plaintiff in ¶ 6 of its Complaint. Since the cash advance was less than the statutory amount and outside the 60 day limit, the plaintiff could not, and did not, prevail on that legal theory.

■ This leads to consideration of whether there was "a reasonable connection between the facts alleged and the legal theory advanced." *Napier, supra.* As set out above, at least certain alleged facts were incorrect. Some facts alleged which appear to speak to the element of intent could not establish intent under the standards set out in *Rembert.* The plaintiff alleged in ¶ 14 of its Complaint that the defendant knew when he incurred the subject debt that he did not have the ability to repay it. As stated by the *Rembert* court, quoting from the opinion in *Anastas v. American Savings Bank (In re Anastas),* 94 F.3d 1280 (9th Cir.1996), "We believe that 'the representation made by the cardholder in a credit card transaction is not that he has an ability to repay the debt; it is that he has an intention to repay.' *Anastas,* 94 F.3d at 1287." *Rembert,* 141 F.3d at 281. The defendant has already acknowledged familiarity with the *Rembert* decision. It therefore knew or should have known that ability to pay is not to be considered in the determination of whether a debtor made a false representation.

■ In any event, all of the allegations of the Complaint were made only on the basis of the schedules filed with the defendant's bankruptcy petition and the plaintiff's own records. The record in this case reveals that the plaintiff did not attend the 341 meeting, nor did it attempt to schedule a Rule 2004 examination (apparently plaintiff procrastinated in retaining counsel to prosecute the matter). While the failure to attend the 341 meeting or schedule a Rule 2004 examination is not "dispositive" it is "probative." *In re Williams,* 224 B.R. at 532. Either one of these actions would have provided information concerning "material facts." The plaintiff did not concern itself with potential material facts until after it filed and pursued this adversary proceeding. Considering this "totality of circumstances," at least by the time the defendant filed his Motion for Summary Judgment and the plaintiff knew that it could not controvert the facts set out in his supporting affidavit, it was not substantially justified in going on.

■ Creditors who challenge the dischargeability of debts based on the fraud exception contained in 11 U.S.C. § 523(a)(2)(A) are well advised to consider whether they can offer facts which can support a finding of fraud pursuant to the standards set out in *In re Rembert, supra.* Allegations that focus on charges incurred or payments not made are not sufficient in and of themselves. A minimal amount of pre-filing investigation might have resulted in a better decision on the part of the plaintiff concerning the filing and pursuit of this adversary proceeding.

■ Defendant's counsel has filed an itemization of the time expended on this case totaling 13.3 hours and has requested an allowance of fees in favor of the defendant in the amount of $1,000.00. The services rendered appear appropriate to the circumstances and the amount requested

appears to the court to be modest for the work performed and is clearly reasonable.

In consideration of all of the foregoing, it is therefore the opinion of this Court that the defendant's Motion to Amend Judgment should be sustained and that he should be awarded an attorney fee in the amount of $1,000.00. A separate order amending the judgment as herein held will be entered.